Good morning and welcome to the Ninth Circuit. Thank you both for joining us on Zoom. We really appreciate it. We have just one case on calendar for today. That's Hedrington v. United States, 23-15191. Each side will have 10 minutes. And Mr. Hedrington, you may begin whenever you're ready. Good morning. Thank you for allowing me a little time when I was hospitalized. I want to thank you for that. Give it on to our guide and to our justice and to Attorney Freeh. The questions of whether California law or federal law precludes effect on the federal. It is here that, number one, federal law governs the preclusive effect of federal and not the state. And when the federal law sitting in diversity hears a case to render a judgment, the preclusive effect of that judgment is in the federal, not the state. However, but the state law is used to determine liability under the Federal Tort Claim Act. Federal law governs the preclusive effect of the prior judgment determined. Number three, the state law governs when the federal district court adopts state law in their judgments. As in Solano, September 13 of 21, my lawsuit at Solano, I was first in the federal court on August 24 of 2018. I filed a lawsuit in Solano because I was feeling I was being untreated by my attorney. And also, I felt that there was some things going on that hindered me from getting my case across. So I filed there. The defendants at that time did not respond to my summons and complaint over a whole year and didn't answer none of my summons or complaint and therefore, by this time, October, by October 31st, I filed a default and Solano County gave me all, gave or granted to me all of the defendant's defaults on them. Complaintant was asking the federal court or the Ninth Circuit Court to award complaintant what was rightfully his. They did not apply themselves with an answer to the complaint at all at that particular time. Now, in regard to complaints of federal judgment in Hedgington versus 21-414, the district court totally misapplied preclusion on that judgment. December the 15th, I think it was December the 15th, 21, they adopted the judgment there too. But what happened with there is Mr. Free, Attorney Free, made false statements concerning that TARP claim. There was only one lawsuit and that lawsuit was in 2018-02-33. He took my TARP claim from that case and made it 21-414. Let me read it from here. Hedgington 1 and 2 was fabricated, Attorney Free deception in 21-4 against 18-333 as a TARP claim to gain statute limitation. Attorney Free deprived the complainant out of winning his case saying he had six months to file the lawsuit, but he did not until March the 8th. Well, that wasn't true because I was to file within six months by February 27-18. I filed August 24 of 2018, which is six months. The case on 21-414 didn't have no TARP claim. I didn't pay no lawsuit for that claim at all. The deception was trying to get statute of limitation because on that case, it was remanded from Solano and they took my amendment complaint and my proof of service and they dismissed the federal defendants for lack of jurisdiction. It was not on statute of limitation. So therefore, that case should have been reversed because it was not on the statute of limitation. The federal defendant was in Solano for nearly a whole year and did not apply to my Summersend complaint in Solano. Asked the court to take jurisdiction notice and a mandate of forcing compliance to me from the defendants. The proof of service was good. My proof of service was good and statute of limitation was not applied for the defendants were dismissed by the lack of jurisdiction. Therefore, the proof of service was good and the case must be overturned over or set aside. The case of 21 defaults of defendants filed in that case as well. In other words, I filed defaults in that case also. Now, whether the case be distinguished from Morin, Morin and Hedgington simply are similar but different. I filed a lot of cases. I had to. Morin wasn't prosecuted by attorney for filing a TARP claim, filing a TARP claim, not filing in the bankruptcy. Tried to help my sister who died, left me four kids, house in pre-foreclosure. I had to put my name to save my sister's house with no bad intentions, literally a shame of publication as a father and as a pastor. I didn't want my name in there or someone seeing that I was sexually assaulted. Attorney export my situation to cover up the federal defendants TARP claim. I filed a TARP for 2017. I was prosecuted for that TARP claim on October 24, 2019 and made agreement to save my TARP claim. Then November 11, 22, I was prosecuted by the district court office again for the same TARP claim when I started another lawsuit for another entry, a violation of my rights. But it was during this time, I was prosecuted for a new case and discovery, double jeopardy order. Judge Miller and the Barnes and attorney sentenced me to cover up my evidence and cover up the wickedness of the federal defendants. Morin had many cases, so did I. Morin did two cases in federal and the second was dismissed by President of Register of Dakota that was applied. Hetchington number one case was August 8, 24, 18. And that case was only for negligence, nothing else but negligence and that my attorney was attorney Bruce Nelson. And because I came from the federal and went to the state, the federal lost jurisdiction by my complaint. And then when I got to the federal from Solano, the state defendants reamended my complaint. And then the district court misstate or lied. The court declined to exercise supplement jurisdiction over the amendment complaint, state law, false of accident. Mr. Hedrington, would you like to save some time for rebuttal after the government speaks? Okay. I could still give you a few minutes, but I think maybe if you want to save that some time, we should stop now and hear from the government. Does that sound okay? I wanted to... Okay. I'll get two more minutes. I'll give you two minutes, but let's let the government argue because you might have some responses to what the government says. So I'll even give you three minutes, but let's have you talk after the government talks for the rest of your time. Thank you. Hello, and may it please the court. Joseph Free on behalf of the United States. Like Mr. Hedrington, I plan to walk through the issues that the court identified in its February 26th order, starting with res judicata. Here, the district court correctly applied federal res judicata law to determine the preclusive effect of a federal judgment applying a federal statute of limitations. And the California state court under analogous circumstances with a private party defendant would do the exact same thing. Counsel, would you agree that whether we apply California law, applying federal law, or apply federal law, that basically both have some variant of a fundamental unfairness or manifest injustice exception to claim preclusion? No, your honor. With respect to federal law, I'd refer to the Supreme Court's decision and federated department stores versus Mautier, which is 452 U.S. 394. And I'd also refer to this court's decision in Owens versus Kaiser Foundation health plans. Both of those decisions make clear that there's no ad hoc equitable exception to res judicata. I believe this court in Marin versus HEW pointed out and said that although the application of res judicata in that case might appear to be harsh, it is not unfair. If there's no exception, why would that be relevant, whether it's unfair or not? Well, I believe the relevance is because, well, I have two responses. The first is in Marin when the court referenced unfairness, it was relying on the federal circuit's decision and young engineers. And their unfairness was referred to a very specific circumstance. And that circumstance is where a plaintiff, because of jurisdictional rules, is required to file two lawsuits containing different claims that both arise from the same transactional nucleus of facts. And under that circumstance, where formal jurisdictional rules require the plaintiff to file two separate lawsuits, there it would be unfair or the two. Are you familiar with the Zhang case? Yes, your honor. I am. And I'm okay. And in the Zhang case, the court said, additionally, we have recognized the res judicata should not apply to a previous dismissal that was based on the statute of limitations. If the effect would be unfair. And then the bottom line on these facts, we conclude that belated application of res judicata to bar litigation would have an unfair effect and thus reverse the district court. Doesn't that suggest that there is such an exception? No. And I'd refer the court to, there is such an exception, but that exception does not allow unbridled equitable application of res judicata in one case or another. It's not an ad hoc equitable exception, depending on the nature of the case. I think this court's decision in Forsyth versus the United States, it's an unpublished case, but it helpfully summarizes Zhang as well as Marino. And it explains what that unfairness exception really means in the context of statute of a final judgment based on statute of limitations and when such a judgment can have preclusive effect. And there it explained that unfairness exception only applies where the case that's being precluded has a different and more generous statute of limitations. That's how this court has explained the holdings in Ingram, Marino, and in Zhang. And here- Here, the first action was not time barred. It was filed in enough time. So why isn't that equivalent to having a longer statute of limitations? It basically isn't the point, just the one that would be precluded isn't untimely? Well, that's the same scenario that was the case in Marin. And there- But Marin is different for other reasons. Like in Marin, there was a local rule that the plaintiff had violated about informing the court of the other action. And here, I don't see any additional problems that Mr. Hedrington walked into beyond this idea that the later case was time barred, but the earlier one wasn't. Well, I think that in Ingram, Marino, the issue was that the plaintiff had the opportunity to apprise the court of the earlier filed timely action and request that the duplicative action be dismissed without prejudice so that it would not have preclusive effect. But here, the district court was aware of the two actions and of the timeliness of the first action. So that's another distinction from Marin that I noted, was that it seemed in Marin, there were two different proceedings happening and the district court was not aware of one and had not been informed of it. But here, you have cases that were related themselves. And so the district court, knowing about the first filed action, proceeded with the second action, resolved it as being time barred, and then moved to the first and didn't do so with any kind of a discussion of what Judge Bennett was talking about with the unfairness exception in our case law or anything related to that. Was that a problem in your view? Was that a problem that the court did not discuss the unfairness exception? I believe that the elements of res judicata were established. And if there was an exception that was to be raised, I believe it was on Mr. Hedrington's counsel who was representing Mr. Hedrington and the bankruptcy estate in the first case. When we argue res judicata applied, they made their argument as to why it should not apply. And that argument was not based on the unfairness exception of Marin. Counsel, I'm going to switch gears here a minute. I'm going to apologize in advance if my question is a little lengthy. And so if you need me to clarify it, please let me know. So in essentially in every FTCA case, failing to satisfy any of the requirements is jurisdictional, right? On the part of a plaintiff. Well, like for example, if a plaintiff files late, the government routinely argues the court lacks jurisdiction because either the administrative claim wasn't filed within six months or the lawsuit wasn't filed, either the six-month bar or the two-year bar, and the government routinely argues that the court lacks jurisdiction, right? That was the routine argument before this court's decision, en banc decision in Wong. The statute of limitations is no longer jurisdictional. Okay. So because there's equitable tolling? Now there is equitable tolling with respect to the statute of limitations. Okay. So if there's no equitable tolling, does the court lack jurisdiction of a late filed claim? No. If there's no equitable tolling, the claim should be dismissed, but it's not because the court lacks jurisdiction. Okay. So are you familiar with the Supreme Court Brownback case? Yes. Yes. All right. So are you aware of any case where a FTCA claim was dismissed on statute of limitations grounds, either the six-month or the two-years ground, and that dismissal was later used to bar on claim preclusion grounds a different lawsuit that there's a loss, an FTCA lawsuit that's dismissed on statute of limitations grounds, and a court finds that that dismissal precludes on claim preclusion grounds a different lawsuit? I can't name a specific case to your honor, but I would say that you can imagine a scenario where if an FTCA lawsuit is brought and it's dismissed or summary judgment is granted on statute of limitations grounds, and then four years later, that same plaintiff brings another lawsuit, I don't see why that lawsuit that was brought four years later would not be barred by res judicata based on that earlier case. I agree that the oddity of this case is that Mr. Hedrington did have a timely filed FTCA lawsuit that was filed first. I understand that's the oddity that was recognized in Marin versus HEW, but I don't think that oddity precludes the application of res judicata in this case. The only fail safe would be this unfairness principle, but I don't think this unfairness principle is an ad hoc equitable exception. I think it's much narrower than that. Again, the court in Forsyth explained that the unfairness is when the case that is going to be precluded has a different and more generous statute of limitations. I don't think that's the case here. It's the same statute of limitations. I see that my time has expired. If we're still asking questions, you should keep talking. I know I have one more, but Judge Bennett looked like he might've had a follow-up question first. Well, I have a different area, Judge Friedland, so if you want to go first- No, go ahead. Mine was different too. You go ahead. Okay. Let me move to res ipsa loquitur. One of the government's arguments in its supplemental brief is that res ipsa loquitur can't be... Well, you can tell me if I'm characterizing this correctly. Res ipsa loquitur can't be met here because basically a rape by a government employee would be precluded under the FTCA from basing a claim on that by the intentional tort bar and that the basis that there had to be negligence here as opposed to just an intentional tort is not the type of obviousness that would lead you to res ipsa loquitur because in one scenario that's being advanced, the claim would be barred entirely by the intentional tort bar. So is that partly the government's argument? If it is, I have a follow-up question. Well, I would say that in this case, the instrumentality of the harm is not known. We don't know if this was a federal employee, if this was some outsider. And I think that is problematic because even if we were going to infer negligence in general, we don't know whether that negligence claim would be one that's even actionable against the United States. It's similar to the situation in Brown versus Poway School District, California Supreme Court case, where it was a slip and fall and the California Supreme Court held that, and there they were applying California's analog of the Government Claims Act. And they said that, and under the California Government Claims Act, the California government can't be held liable for a dangerous condition that was not created by a California employee. And so they said that res ipsa loquitur would not save the plaintiff's case from summary judgment, because even if we infer negligence, we don't know whether that negligence claim is even going to be actionable. And so here, the way it... But here, wouldn't you get to the jury on this couldn't happen, no matter who did it. This couldn't happen in a government hospital without negligence, whether the rape was by a government employee, as I think one can infer from Mr. Hedrickton's declaration, in the light most favorable to him. But regardless, whether being taken somewhere, given a shot, and then raped, wouldn't this be the type of thing where this normally couldn't occur without negligence, that someone couldn't be left alone for long enough in a government facility to be raped, whether the rapist is a government employee or a third party. It seems to me that this would be a very normal res ipsa circumstance with this type of action being committed in a closed government hospital facility. I would say no, Your Honor. I mean, even in controlled environments like a hospital or a prison, sexual assaults unfortunately do and can happen. And in certain cases, it may well be that the prison or the hospital itself breached some duty of care or was negligence. But I don't think that is necessarily or even ordinarily the case, especially in these circumstances where you have a prison employee or a hospital employee who is able to surreptitiously commit the assault. I just see a prison totally different in this regard than a hospital. I mean, maybe it would be the same or similar to the hospital ward of a prison. But I don't see this as the same as a cell with two cellmates, where it would be a res ipsa type of thing. But here, it just seems like under California law, you meet, at least in the light most favorable to the plaintiff, the standards for this couldn't normally happen without negligence. And just the fact that these things do happen doesn't seem to me to take it out of res ipsa. Certainly, Your Honor. It's whether they ordinarily happen. And here, where Mr. Hedrington has alleged that it was essentially a conspiracy, a cabal of his physical therapist and his surgeon who surreptitiously took him down to the basement and committed these acts. Well, I think that, I mean, that's a horrific thing that he alleges. But again, the negligence theories that come to mind are one of negligently hiring or supervising your employees. I don't think there's anything negligent about leaving Mr. Hedrington with his physical therapist for an extended period of time. And if he was sexually assaulted during that period of time, as horrific as that is, I don't think that ordinarily suggests that the hospital was negligent. In general, I'm not familiar with any case that holds that an intentional criminal sexual assault ordinarily doesn't happen without the negligence of some third party. You asked Mr. Hedrick during his depo, and it is your contention, it's your belief that the assault happened while you were unconscious. And the answer is yes. That was a question and answer, right? That sounds like something I would have asked, Your Honor. And page 7 of 86 of the depo. And so in the light, well, again, since this happened while he was unconscious, I think that in his allegations, I think that changes it. But you've answered my question. Thank you, Judge Friedland. I had a question about the, so you mentioned hiring and training a moment ago. And I think in conjunction with that, you made an argument about the discretionary function exemption. And I just wondered, my understanding is that the first time you mentioned the discretionary function exemption was in your supplemental brief. I wanted to confirm that I'm right about that. Because I think you also made an argument that we shouldn't be considering things that weren't raised in the district court. And so there seemed to be a bit of tension between raising it now for the first time and that argument that we shouldn't consider new things. I wondered if you could address that. Yes, Your Honor. We did raise the discretionary function exception, as well as the intentional tort exception in our motion for summary judgment. I believe Judge Mueller's decision even addresses that she was not going to address it. It wasn't in your first brief to us. Maybe that's where I'm getting confused. Yes. So it was raised in our motion for summary judgment below. The arguments that Mr. Hedrington presented in his opening brief did not appear to warrant bringing them back. Because I believe his opening brief just addressed res judicata. It didn't even address the sufficiency of the evidence argument that had been sustained below. So we didn't bring it back up again. But in the context of res ipsa loquitur, I think the intentional tort exception and the discretionary function exception rear their heads once more. Because going back to an earlier point is that if res ipsa loquitur permits the inference of negligence or some negligence theory, well, even assuming that's the case, the theories that are inferred have to at least be actionable against the United States in order to overcome summary judgment. And so the record as it stands leaves many open questions as to the nature of the assault and who perpetrated it. It would be anyone's guess if this is a federal employee, a non-federal actor, or whether the assault even happened. I mean, I have to note that the piece of evidence here that would completely exonerate the United States is what was foliated intentionally by Mr. Hedrington. So if we're going to sua sponte, raise evidentiary presumptions for the first time on appeal, there's also this foliation point, which would have clearly, I would have argued, would have precluded the assertion that the sexual assault happened in the first place. But more to your point, Judge Freeland, it was raised below in our motion for summary judgment. It reared its head once more to make our point with respect to res ipsa loquitur that without more, many of the theories that would be inferred would not even be actionable against the United States. Okay. So if it's preserved, then I think your argument is that this would have to be negligent hiring or training, and those things are within the exemption. But I'm wondering why some of his other allegations wouldn't be outside the exemption. So I think he alleges that a nurse named Mendoza failed to obey a discharge order. Why wouldn't that be outside of the exemption? It doesn't seem discretionary. So if this whole thing happened because he wasn't to not discharge him. I'm sorry, Judge Freeland. So the negligence theory is that nurse Mendoza negligently failed to discharge him on time. Yes, and that kept him here for this whole thing to happen. That could be one of the steps of the chain or other duties like having someone watching someone who's unconscious. I mean, some of these other things might not be discretionary that could be part of the causal chain here. Well, and I don't think the presumption that is provided by res ipsa loquitur to basically allow all of these theories of negligence to go forward without any evidence to support them. I think that's stretching res ipsa loquitur too far. For example, I mean, if this was raised below, I don't think that the failure to discharge a patient on time approximately causes a sexual assault. I don't think that is within the zone of foreseeability that when a nurse is 30 minutes late with discharging a patient and that patient is horrifically assaulted, that the 30 minute failure of that nurse to discharge the patient on time approximately causes the sexual assault to occur. And again, res ipsa loquitur, it's an evidentiary presumption. The defendant can make that presumption completely disappear if they produce evidence from which a jury or a fire near effect could find that they weren't negligent or that the negligence did not approximately cause the injury. And here, res ipsa loquitur is being raised for the first time right now in certain respects. And frankly, it's unfair that the United States wouldn't have had the opportunity to develop its summary judgment record in light of these points. Judge Phelan, did you want to follow up? No, go ahead. Go ahead. I wanted to circle back, Mr. Freeh, with whether state or federal laws should apply to the state court. And I know the government has argued that, you know, it should be whatever a state court, you know, the analog is if this were filed in state court, what law would the state court apply? And the only thing that I could find on that score was there was a, I don't know if you're which also applied. It's Walker versus Andrews, which also applied the California primary rights analysis to determine the preclusive impact of a federal judgment. So why isn't it state law that should actually govern our analysis of this issue in your view, as opposed to the federal law? I think that it has to be federal law because of the Supreme Court's holding in Semtec. And Semtec is a fairly recent decision. And I'm not aware of cases applying the Federal Tort Claims Act and whether or not a prior federal judgment is going to have preclusive effect after Semtec. And I think the Semtec decision makes very clear about how res judicata is supposed to apply in the context of federal judgments. Well, but I mean, just to follow up, you know, Semtec talks about for federal question issues. But here are the statute, the FTCA statute talks about adopting, and this is the conundrum that different circuits are dealing with, but you know, where the U.S. of a private person would be liable to a claim in accordance with the law of the place where the act or omission occurred. And so that was the basis for Felice's determination that it should be state law that should apply, including its rules on preclusion. So really, you know, Semtec, if it were clear for federal questions, sure. But when the statute, when the FTCA in particular applies, you know, it tells us to apply the law where the occasion occurred. That's what muddles it. And here we have a Ninth Circuit decision that didn't get into an analysis of it, but are we not bound to follow that case? So two points, maybe three points. So the first is that I think the missing link between Felice and Semtec is the Richards decision, 1961 decision, two years after Felice. And Richards, it rejected what's called the internal law model of the Federal Tort Claims Act, which is this reflexive application of state law to all the issues that come before it. And I believe the Ninth Circuit before Richards was in that camp, the internal law paradigm. And that's what arguably Felice applied. After Richards, the Supreme Court said, no, you don't, it's not an internal law application. It's a whole law application, which means when a California or other state court would apply another state's law or even federal law, that is what the federal court is supposed to do under the FTCA. So if this, for example, was an Oregon judgment and the California court would have applied Oregon residue to Cottlet to determine its preclusive effect. Well, then the federal court sitting in California needs to do what the California court would do, which is apply Oregon law. And here, it's not Oregon law, it's federal law. What would the California court do? I submit that it would have to, under SEMTEC, apply federal law. Now, the second point that the court, I think, either referenced specifically or alluded to is this conundrum where the Federal Tort Claims Act is kind of analogous to diversity jurisdiction. In that, like a diversity judgment, the Federal Court operates state law to provide the elements of a cause of action. So one could contend, shouldn't, in SEMTEC, the Supreme Court held that a federal diversity judgment, the preclusive effect of a federal diversity judgment will turn on the state law of preclusion where that federal court was sitting. Shouldn't that same reasoning apply to a Federal Tort Claims Act judgment? I think it's a difficult argument, but it's fortunately one that the court doesn't have to wrestle with here because the Federal Tort Claims Act judgment here turned on a matter of federal law, a federal statute of limitations. And in SEMTEC, the court made clear that even a diversity judgment where we would typically apply state preclusion law to determine whether that diversity judgment is preclusive, if that diversity judgment turns on a matter of federal law, if, for example, the case was dismissed under Rule 41 for failure to prosecute or failure to obey a court order, then we apply federal res judicata law. So here, because this, the preclusive FTCA judgment turns on a matter of federal law, a federal statute of limitations, it, I would say it's almost, it's clearly, it's clearly governed by federal res judicata law. Thank you for answering our questions. Mr. Hendrington, we took the government over its time, so I'm happy to give you, let's give you five minutes. I know you had two minutes more, and then if you have responses to the government also, you all hopefully have time to address them. I just have a little bit. What I want to talk about is I was taken out of ICU. So with that discretion of function, everything was relied upon the government. I have no control over anything. I was there with an open heart, cracked chest, wide open. I had no power to struggle to fight or do anything. So I was taken out and Mendoza was my RN ICU nurse. He said in the 24-hour notice that Ms. Hendrington was preparing to discharge Ms. Hendrington at 0300. 0300 had the tooth removed out of my body, and they gave So I was really, you know, and Dr. Skye says while he was being interviewed by AOSI, he said that the sedatives linger on the patient. So I was really still getting drugged, but I missed my discharge time, and then I had seven to nine discharge times on the same day. And that's factual because it's in the records. I've showed that. That's factual, and then I have two shots. So, you know, I understand, Mr. Frey, but there is a lot of evidence that resuciproloquia would bring, and that is, has brought, and it has been talked about. I brought it up in a different way in my briefs as a pro per, but, you know, but there's so much evidence there that it's almost impossible not to see something happen, you know, why I missed, why there was a lawsuit filed against the Grand Rapids Center because Ms. Hendrington wasn't there four to five hours. They was trying to find me, and, you know, it's just so much going on there that I just believe that everything rests upon the government here. And then I also believe, too, that the state has some type of jurisdiction here. Going back to the defaults here, which is not a part of everything, but it is a part of it, Mr. Frey and the federal defendants were in Solano, and they did not respond at all. And therefore, upon that, I feel that Ms. Hendrington ought to be awarded, you know, some type of justification here. So, I'm not trying to be greedy, but something happened to me. I wasn't aware of who did it, how they did it, you know, I wasn't aware of all that. But all I know that when I came alive, I came back, there was something was inside me. And so, when that happened, I knew something. And so, I died that day to live today to tell the story. And so, I felt like my life was in jeopardy. I had to protect myself and be careful. And especially when I came down there, and when I saw all the white men down there with white coats, and at the time, I didn't understand because I was still on the drugs, on the sedative, and all the drugs that week. And then, and now I'm down here, and I see all these people, and they're all white. And I ain't saying I'm racist, because my son's married white women. So, I'm not. But when I saw that, I didn't know what was going on until later on, my body was telling me danger, danger, danger, and I was having chest pain. And so, I needed something. So, I'm just saying, you know, and if I was, if the order was taken, and the order simply was, Mr. Hedgerton is accepted to Fresno VA, it's a program down there, 412216, he needs to arrive there no later than 10 o'clock, which means he needs to leave at David Graham Medical Center at 6 o'clock. I didn't leave there till 1025. Now, how can you explain that? And I got proof of that. God bless you, I'm done. Thank you both sides for the helpful arguments. This case is submitted and we are adjourned. Bless you. Thank you. Thank you.
judges: FRIEDLAND, BENNETT, SANCHEZ